UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LINDA SLOAN,

Plaintiff,

v. Case No: 2:13-cv-314-FtM-29CM

CAROLYN W. COLVIN,
Commissioner of Social Security,[1]

Defendant.

---

# REPORT AND RECOMMENDATION[2]

Before the Court is Plaintiff Linda Sloan's ("Plaintiff") appeal of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claims for Disability Insurance Benefits and Supplemental Security Income. For the reasons discussed herein, the Court recommends that the decision of the Commissioner be **AFFIRMED** pursuant to 42 U.S.C. § 405(g).

## I. Issues on Appeal

The issues presented is this appeal are whether the Administrative Law Judge's ("ALJ") decision is supported by substantial evidence and whether he applied the correct legal standards in reaching that decision. Plaintiff raises four issues on

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Commissioner Michael J. Astrue as the Defendant in this suit. Fed. R. Civ. P. 25(d). No further action need be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Failure to file written objections to the proposed findings and recommendations contained in this report within **fourteen (14) days** from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

appeal, specifically that: (1) the ALJ erred in determining that Plaintiff's mental impairments of depression, generalized anxiety and social phobia were nonsevere because they severely affect her ability to complete work related activities and meet the durational requirement; (2) the ALJ's Residual Functional Capacity ("RFC") determination is not supported by substantial evidence because the ALJ failed to properly analyze the opinion of Plaintiff's treating physician; (3) the ALJ's credibility determination is not supported by substantial evidence because the ALJ erred in his analysis of the required factors; and (4) the ALJ's determination that Plaintiff could return to her past relevant work ("PRW") as a medical secretary is not supported by substantial evidence in light of the ALJ's errors in determining that Plaintiff's mental health impairments were not severe, in calculating Plaintiff's RFC and in determining credibility.

**II. Procedural History**

On June 7, 2010, Plaintiff filed applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI"), alleging a disability onset date of January 1, 2010. Tr. 21, 140, 142. Her applications were denied both initially on August 25, 2010 and on October 22, 2010 upon Plaintiff's request for reconsideration. Tr. 75-78. Plaintiff then requested and received a hearing before ALJ Richard D. Brady on May 16, 2012. Tr. 21, 100-01. Following the hearing, the ALJ issued an unfavorable decision, finding that Plaintiff is not disabled and denying her claim for benefits. Tr. 21-30.

Plaintiff requested review by the Appeals Council, which was denied on February 2, 2013. Tr. 9-12. The Appeals Council again denied Plaintiff's request for review on May 22, 2013. Tr. 1-4. Plaintiff timely filed her Complaint in this Court, pursuant to 42 U.S.C. § 405(g), on April 22, 2013 (Doc. 1). The matter has been fully briefed and is now ripe for review.

**III. Summary of the ALJ's Decision**

The ALJ first determined that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2015. Tr. 23. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 27, 2010, the amended[3] alleged onset date ("AOD"). Tr. 23.

At step two, the ALJ determined that Plaintiff "has the following severe impairments: degenerative disc disease of the lumbar spine and obesity (20 CFR 404.1520(c) and 416.920(c))." Tr. 23. The ALJ also found that Plaintiff's medically determinable mental impairments of depression, generalized anxiety disorder and social phobia, considered singly and in combination, do not cause more than minimal limitation in her ability to perform basic mental work activities and are therefore nonsevere. Tr. 24.

In making that determination, the ALJ considered the four broad functional areas set forth in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 C.F.R., Part 404, Subpart P,

---

[3] Plaintiff initially claimed disability beginning January 1, 2010, but her attorney indicated at the hearing that they were amending that date to April 27, 2010. Tr. 42.

Appendix 1), also known as the "paragraph B" criteria. Tr. 24. The ALJ adopted the opinions of the state agency medical experts in finding that Plaintiff has no more than mild limitation in activities of daily living, social functioning, or concentration, persistence or pace. Tr. 24-25. The ALJ noted that Plaintiff "generally alleged limitations related to these areas due to her physical and not mental conditions" and stated that, despite her alleged disability, Plaintiff continued to engage in various activities such as light cleaning, yard work, walking her dog, using her computer and going to lunch with friends. Tr. 24-25.

The ALJ also considered Plaintiff's mental status exams that showed no indication of a sustained decrease in social or cognitive functioning and determined that Plaintiff's medically determinable mental impairments are nonsevere because they cause no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation of an extended duration. Tr. 25. The ALJ also determined that, even if Plaintiff's mental impairments initially caused more than minimal limitation, such severity did not last nor was expected to last for 12 continuous months. Tr. 25.

Notwithstanding the impairments the ALJ found to be severe at step two of the sequential evaluation, at step three the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 25. At step four, the ALJ found that Plaintiff has the RFC to

perform less than a full range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b).[4] Tr. 26.

Although the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms, he determined that "the medical evidence of record simply does not support the claimant's additional alleged degree of limitation due to her impairments" and reflects only limited treatment related to her allegations of headaches and extremity numbness. Tr. 26-27. The ALJ determined that Plaintiff's statements as to the intensity, persistence and limiting effects of her symptoms are not fully credible to the extent they are inconsistent with her RFC. Tr. 27.

The ALJ determined that medical source statements by Plaintiff's primary care physician, Dr. Joseph S. Chirillo, Jr., were not entirely credible because they were inconsistent with his other reports and the record as a whole. Tr. 27. The ALJ also noted that "the majority" of Dr. Chirillo's records reflect that Plaintiff called his office and spoke to a nurse, but only actually saw Dr. Chirillo "perhaps once in 2008, in June 2009, and in June 2010," the last of which appeared to be merely for an annual checkup and to have Dr. Chirillo prepare a disability form. Tr. 27.

[4] Specifically, the ALJ found that Plaintiff can to lift up to 10 pounds frequently or occasionally, sit up to six hours in an eight hour workday, stand and/or walk from two to four hours in an eight hour workday, can perform occasional balancing, stooping, kneeling and crouching, but cannot climb ladders, ropes, or scaffolds, crawl or experience concentrated exposure to noxious dust and fumes, and requires the customary work breaks once every two hours. Tr. 26.

The ALJ further explained that Dr. Chirillo's June 2010 report was given a reduction in weight, because Dr. Chirillo "appears to find cervical arthritis and fibromyalgia syndrome despite a lack of records documenting these impairments." Tr. 27. The ALJ noted that Dr. Chirillo also completed medical source statements in February and November 2011, which found that Plaintiff had even greater limitations despite not conducting examinations. Tr. 27. The ALJ also noted that Dr. Chirillo "later clarified that the additional limitations were primarily due to the claimant's subjective reports." Tr. 27. The ALJ determined that the record as a whole did not reflect worsening of Plaintiff's conditions and noted that Plaintiff "has even reported that she stopped working, at least in part, because she was caring for her dying mother." Tr. 27-28.

The ALJ also cited a July 2010 consultative examination conducted by Dr. Pascal Bordy, who reported that Plaintiff had "relatively benign examination findings" and exhibited no joint pain, tenderness, swelling or muscle atrophy. Tr. 28. Dr. Bordy found that Plaintiff exhibited full muscle strength, intact sensation, normal fine manipulation, normal tandem gait, normal toe and heel walking and a normal general mental status evaluation. Tr. 28. The ALJ determined the negative results of various tests "collectively contradict many of the claimant's allegations regarding extremity weakness, numbness or tingling." Tr. 28.

The ALJ explained that he gave little weight to the report submitted by Plaintiff's daughter, Autumn Hoffman, because it was "essentially a restatement of the claimant's general allegations." Tr. 29. The ALJ concluded that Plaintiff's

complaints were not persuasive considering her reported activities of daily living, the objective medical evidence and Plaintiff's medical treatment records. Tr. 29. Accordingly, the ALJ concluded that Plaintiff was capable of performing her past relevant work as a medical secretary, and Plaintiff is therefore not disabled. Tr. 30.

## IV. Social Security Act Eligibility and Standard of Review

To be entitled to benefits, a claimant must be disabled. A "disability" reflects the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. §§ 404.1505. A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques, and the impairment must be severe, making the claimant unable to do her previous work or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2) and (3); 20 C.F.R. §§ 404.1508-404.1509.

The SSA promulgated regulations detailing a sequential evaluation process to be used in determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The evaluation process requires the ALJ to determine, in sequence, whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment; whether the severe impairment meets or

equals the medical criteria set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; and whether the claimant can perform her PRW.

If the ALJ determines the claimant cannot perform her PRW, the final step of the evaluation process requires the ALJ to determine if the claimant can perform any other work in the national economy in light of her age, education and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). The claimant bears the burden of persuasion through step four and at step five the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). A claimant is entitled to benefits only if the ALJ determines that she is unable to perform her past work or any other work. *Id.* at 141-42.

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988). A determination by the Commissioner that a claimant is not disabled must be upheld if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla; the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision, *Foote,* 67 F.3d at 1560, and

must affirm the decision of the Commissioner if the decision is supported by substantial evidence even if the reviewer would have reached a contrary result or finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). Credibility determinations fall within the province of the ALJ, *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005), and a reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record, nor will it reweigh the evidence. *Foote,* 67 F.3d at 1560, 1562.

## V. Relevant Evidence

### *a. Plaintiff's testimony and reports*

At the time of the hearing, Plaintiff was fifty-five years old and had earned a high school degree. Tr. 41. Her past relevant work consists of approximately twenty-five years as an emergency room secretary. Tr. 41-42. Plaintiff claims disability beginning April 27, 2010, when she lost her job due to excessive absences.[5] Tr. 43. Plaintiff estimated that she missed five days of work per month, and she has not attempted to return to work. Tr. 44, 49.

Plaintiff alleges that she is unable to work because she cannot sit for long periods of time due to back pain and because her legs "go numb" from her knees down

[5] Plaintiff had been taking time off since November 2009 to be with her ailing mother, but testified that she had "a lot of absenteeism" due to back pain and migraines that occur three to four times per month, last for three days and prevent her from being in the light. Tr. 43, 48, 49.

if she sits longer than ten to fifteen minutes. Tr. 44. Plaintiff experiences numbness in her arms which causes her to drop objects, and certain turning motions hurt her ribs. Tr. 44, 46. Plaintiff seeks treatment from Dr. Chirillo[6] twice per year but, rather than visiting the doctor's office, she calls every three months to speak with a triage nurse. Tr. 48. Plaintiff was prescribed Lortab and Mobic and ordered to complete a MRI and CT scan. Tr. 45-46. She has never been hospitalized or had surgery for her physical or mental problems. Tr. 56-57. Plaintiff also saw Dr. Bernstein for depression and anxiety and has been prescribed Xanax and sleep medication. Tr. 50-51.

When asked how she spends her day, Plaintiff testified:

> Well, I pay attention to the dog a lot or I don't like to sit and just watch tv. I will do a couple of things on the computer but then my right side starts bothering me, of course with the mouse. I mean, I read articles on it and stuff like that, on the internet but then I have to get up and move around. Then I may start a load of wash and then wait for my daughter or son-in-law to come home and they take it out of the wash and put it in the dryer and, of course, cook lunch.

Tr. 52. Plaintiff's daily routine also includes lying down from 3 to 5, because she "ha[s] to get away from being out in the house or around the house or outdoors. It's kind of like the quiet time to get away." Tr. 53. During that "quiet time" she watches television, sleeps and sometimes reads, but explained that she has to read an article two or three times to understand it. Tr. 54.

---

[6] The transcript repeatedly states "Dr. Trujillo," but there are no records indicating Plaintiff saw a doctor by that name. Instead, the testimony appears to refer to Plaintiff's treatment by Dr. Chirillo.

As a medical secretary, Plaintiff worked four days per week, twelve hours per day and worked mainly at a computer. Tr. 161-62. In a typical workday she stood for one hour, sat for eleven hours, crouched for one hour, handled large objects for one hour, reached for eleven hours and wrote, typed or handled small objects for eleven hours, but did not walk, climb, stoop, kneel, or crawl. Tr. 162. She frequently lifted up to 30 pounds, lifted boxes of paper with 10 reams and walked about 30 steps.[7] Tr. 162. Plaintiff reported that she stopped working on April 27, 2010 because of her conditions "and other reasons," including that she was having a hard time dealing with the death of her mother. Tr. 160. Plaintiff also reported taking medication for her back, depression, migraines, sleep, anxiety and panic attacks and a muscle relaxer. Tr. 163.

Plaintiff reported that she does some cleaning, walks her dog, depending on her leg pain, goes to the store, reads, uses the internet, naps, watches television, goes out to dinner with her daughter and son-in-law, does laundry and pays bills. Tr. 184. Despite reporting that her pain sometimes prevents her from sleeping comfortably or wakes her up at night, Plaintiff reported that her conditions do not impact her ability to dress, care for her hair, shave or use the toilet and that her conditions have not changed her cooking habits. Tr. 185-86.

Plaintiff is also able to do dishes, laundry, vacuum, dust, plant flowers, go outside three or four times per day, drive a car and shop for groceries, clothes and pet

[7] Plaintiff reported on a separate form completed ten days earlier that the heaviest weight she lifted was 20 pounds, that she frequently lifted only 10 pounds, and carried a box of ten reams of paper "14 feet about 2 times a week." Tr. 174.

needs three times per week, each time for about an hour. Tr. 186-87. She can pay bills, count change and use a checkbook/money orders, and her hobbies include reading, playing games on the computer, playing with her dog, watching television and making wreaths, but she must get up and move around after 30-60 minutes due to her back. Tr. 187-88.

Plaintiff reported that her medical conditions affect lifting, bending, standing, sitting, kneeling, completing tasks, concentration and following instructions. Tr. 189. Specifically, Plaintiff reported that her conditions affect her ability to lift over five pounds and cause her to become sidetracked; and she stated that she can only walk for three blocks before she needs to rest, can only pay attention for ten minutes but finishes what she starts, can only follow written instructions after reading them three times and cannot follow spoken instructions well without being shown. Tr. 189. She also reported that she handles stress okay but does not handle changes in routine well and does not want to be around people. Tr. 190.

Plaintiff described low back pain that radiates to her upper right shoulder and sides, sometimes affects her left leg and causes numbness or tingling in both arms, and that the pain is caused by activities like walking, standing or sitting too long and bending, but reported that her pain is managed by medication and that she experiences no side effects of her medication. Tr. 206-07. Ten weeks later, Plaintiff reported that her right leg numbness, calf pain, shoulder pain and upper back pain worsened, that she is easily distracted and feels like crying for no reason. Tr. 213. Plaintiff reported that she is “more irritable,” does not cook or clean and cannot do

chores. Tr. 213, 215. Plaintiff reported daily activities such as walking her dog, washing dishes, doing light housework, going to the store, washing clothes and watching television, but that she cannot stand for longer than ten to fifteen minutes. Tr. 225. She reported that she prepares meals three to five times per month when she has someone else to cook for, shops once or twice per week for about an hour, is able to pay bills, count change, use a checkbook/money orders, read, cross stitch and talk to others on the phone and enjoys spending time with her daughter and son-in-law. Tr. 227-29.

*b. Third party non-medical evidence*

Plaintiff's daughter, Autumn Hoffman, described Plaintiff's daily activities as "the usual things" like getting groceries, doing laundry and light cleaning. Tr. 196. She reported that Plaintiff is able take care of and play with her dog, and stated that Plaintiff's conditions do not affect her ability to dress, bathe, care for her hair, shave, feed herself, use the toilet, or perform other personal care activities. Tr. 197. Ms. Hoffman reported that Plaintiff does not need to be reminded to take care of her personal needs or grooming or to take medication. Tr. 197. She also reported that Plaintiff prepares her own meals daily, "like the average person," and that Plaintiff's conditions have not affected her cooking habits. Tr. 198.

Ms. Hoffman also reported that Plaintiff is able to do light cleaning, laundry and dishes "pretty much like [an] average person" and does not need encouragement. Tr. 198. She stated that Plaintiff is able to walk, drive and ride in a car, is "capable of getting around" and shops for groceries and other things "perfectly normal . . . like

a regular person would." Tr. 199. Ms. Hoffman reported that Plaintiff can pay bills, count change, handle a savings account and use a checkbook/money orders, and that Plaintiff reads, watches television, plays computer games, is able to spend time with others, goes to lunch with a friend, hangs out at the pier and talks on the phone, and described Plaintiff's ability to do these activities as "like a normal person" with no changes in social activities due to her conditions. Tr. 199-201. She also reported that Plaintiff has no problem paying attention, finishes what she starts, follows written and spoken instructions "just fine" and gets along with authority figures "just fine." Tr. 201-02.

*c. Treating physician opinions and reports*

Plaintiff's primary care physician, Joseph S. Chirillo, Jr., M.D., completed a Residual Functional Capacity Questionnaire on June 7, 2010, in which he states that he treats Plaintiff at his office 1-2 times per year and lists her diagnoses as "lumbar spine – degenerative disc disease, [osteoarthritis]; possible foraminal stenosis" and her prognosis as "fair." Tr. 296. Dr. Chirillo stated that Plaintiff's symptoms are "often" severe enough to interfere with the attention and concentration required to perform simple work-related tasks and that side effects of medication might affect her capacity for work. Tr. 296. He also stated that Plaintiff will need to recline or lie down in excess of typical breaks during a hypothetical workday. Tr. 296.

Dr. Chirillo reported that Plaintiff can walk only two blocks without significant pain, sit for 45 minutes at a time, stand/walk for 15 minutes at a time, sit for 6 hours in an 8-hour workday and stand/walk for 2 hours in an 8-hour workday, and needs a

job that permits shifting from walking, standing and sitting positions at will as well as unscheduled breaks every 1-2 hours. Tr. 296. He also stated that Plaintiff can occasionally lift 10 pounds or less and can never lift 20 or 50 pounds, but that she has no limitations on repetitive reaching, handling or fingering and will likely be absent from work once or twice per month due to her conditions. Tr. 297.

Dr. Chirillo completed additional Residual Functional Capacity Questionnaires dated February 23, 2011 and November 21, 2011. Tr. 387-88; Tr. 391-92. The February 23, 2011 questionnaire identifies Plaintiff's diagnoses as cervical and lumbar foraminal stenosis and osteoarthritis and Plaintiff's symptoms as back and neck pain, stiffness and intermittent numbness that "frequently" are severe enough to interfere with the attention and concentration required to perform simple work-related tasks. Tr. 387. He identified Plaintiff's prognosis as "fair." Tr. 387. Dr. Chirillo also identified drowsiness and possible decreased concentration as side effects of Plaintiff's medications that may impact her ability to work and reported that Plaintiff will need to recline or lie down in excess of the typical breaks in a hypothetical 8-hour workday. Tr. 387.

As to Plaintiff's functional limitations, Dr. Chirillo indicated that Plaintiff can walk 1-2 city blocks without rest or significant pain, sit for 30 minutes and stand/walk for 10 minutes at a time and can sit for a total of 6 hours and stand/walk for a total of 2 hours in an 8-hour workday, but will need to take unscheduled breaks lasting 5 to 10 minutes every 30 to 60 minutes in an 8-hour workday. Tr. 387. Dr. Chirillo stated that Plaintiff can only occasionally lift 10 pounds or less and can never lift 20

or 50 pounds, and stated that Plaintiff is only able to reach with her arms for 30% of the time during an 8-hour workday, but is able to use her right and left hands to grasp, turn and twist objects and her right and left fingers to perform fine manipulations 100% of the time. Tr. 388. Finally, Dr. Chirillo estimated that Plaintiff is likely to be absent from work due to her impairments more than four times per month and stated that Plaintiff's depression will affect her ability to work at a regular job on a sustained basis. Tr. 388.

The November 21, 2011 questionnaire also included diagnoses of lumbar spine degenerative disc disease, spondylosis[8] and possible stenosis.[9] Tr. 391. Dr. Chirillo reduced the time that Plaintiff is able to sit from 30 minutes to 10 minutes, but increased the time Plaintiff is able to stand/walk from 10 minutes to 15 minutes, and reduced the total hours that Plaintiff can sit in an 8-hour workday from 6 hours to 2 hours. Tr. 391. The February 23, 2011 questionnaire stated that Plaintiff will need to take unscheduled breaks lasting 5 to 10 minutes every 30 to 60 minutes in an 8-hour workday, but the November 21, 2011 questionnaire stated that Plaintiff will need to take unscheduled breaks lasting 20 to 30 minutes each 4-5 times per day. Tr. 391. The November 21, 2011 questionnaire also stated that Plaintiff can only use her hands to grasp, turn and twist objects 80% of the time and can only use her

---

[8] Spondylosis is another name for osteoarthritis of the lumbar spine. Tr. 403.

[9] Dr. Chirillo's February 21, 2012 letter explained that he diagnosed Plaintiff with "possible" foraminal stenosis due Plaintiff's description of her symptoms and because the particular MRI utilized displays less resolution and "there is no guarantee the MRI is perfect." Tr. 403.

fingers for fine manipulation 90% of the time during an 8-hour workday, both reduced from 100% on the February 2011 questionnaire. Tr. 392.

Dr. Chirillo completed another Residual Functional Capacity Questionnaire on August 13, 2012 that identifies Plaintiff's diagnoses as lumbar spine degenerative disc disease, lumbar spondylosis, possible stenosis, cervical spine osteoarthritis and foraminal stenosis and Plaintiff's prognosis as fair to poor. Tr. 442. He also reported Plaintiff's symptoms as lumbar pain, bilateral leg numbness/tingling, neck pain and stiffness and muscle tension headaches and noted these symptoms are "frequently" severe enough to interfere with the attention and concentration required to perform simple work-related tasks. Tr. 442. Dr. Chirillo described sedation, decreased concentration/focus, dizziness and depression as medication side effects that may impact Plaintiff's capacity for work. Tr. 442.

In the August 13, 2012 questionnaire, Dr. Chirillo reported that Plaintiff's exertional functions were even further reduced and stated that she will need to recline or lie down during a hypothetical workday in excess of typical breaks. Tr. 442. Dr. Chirillo also estimated that Plaintiff can walk less than two blocks without significant pain, can only sit for 15 minutes[10] at a time, stand/walk for 15 minutes at a time, sit for 2 hours in an 8-hour workday, stand/walk for 2 hours in an 8-hour workday and needs a job that permits shifting from walking, standing and sitting

[10] Increased from 10 minutes in the November 2011 questionnaire.

positions at will and unscheduled breaks each lasting 20-30 minutes 5-6 times[11] per day. Tr. 442.

Dr. Chirillo also reported that Plaintiff can only occasionally lift 10 pounds or less, can never lift 20 or 50 pounds, can only use her hands to grasp, turn or twist objects 80% of the time, her fingers to perform fine manipulation 90% of the time and her arms for reaching 30% of the time during an 8-hour workday.[12] Tr. 443. Finally, Dr. Chirillo reported that Plaintiff is likely to be absent from work more than four times per month due to her impairments or treatment, increased from 3-4 times per month in the November 2011 questionnaire, and stated that side effects of Plaintiff's medications further limit her ability to work. Tr. 443.

*d. Psychological evidence*

Dr. Chirillo completed a Mental Capacity Assessment on August 13, 2010 in which he identified Plaintiff's diagnoses as depression and cognitive effects of prescriptions. Tr. 444. As to Plaintiff's "understanding and memory," Dr. Chirillo reported that Plaintiff has slight limitation in her ability to remember locations and work-like procedures, moderate limitation in her ability to understand and remember detailed instructions and no limitation in her ability to understand and remember very short and simple instructions. Tr. 444. As to her "sustained concentration and persistence," Dr. Chirillo identified slight limitation in Plaintiff's ability to carry out detailed instructions, perform activities within a schedule, maintain regular

[11] Increased from 20-30 minute breaks 4-5 times per day in the November 2011 questionnaire.

[12] These figures were unchanged from the November 2011 questionnaire.

attendance and be punctual within customary tolerations; moderate limitation in her ability to maintain attention and concentration for extended periods; and no limitations in her abilities to carry out very short and simple instructions or sustain an ordinary routine without special supervision. Tr. 444.

Dr. Chirillo reported that Plaintiff has the following limitations: slight limitation in her ability to work in coordination with or proximity to others without being distracted and to make simple work-related decisions, moderate limitation in her ability to complete a normal workday without interruptions from psychologically based symptoms and to perform at a consistent pace with a standard number and length of rest periods and marked limitation in her ability to complete a normal workweek without interruptions from psychologically based symptoms. Tr. 445. Dr. Chirillo also stated that Plaintiff is likely to have four or more absences in an average month. Tr. 445.

As to "social interaction," Dr. Chirillo reported that Plaintiff has no limitations in her ability to ask simple questions or request assistance, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, or to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. Tr. 445. Dr. Chirillo noted slight limitations in Plaintiff's ability to interact appropriately with the general public and to accept instructions and respond appropriately to criticism from supervisors. Tr. 445. Finally, as to Plaintiff's "adaptation," Dr. Chirillo identified no limitations in her ability to be aware of normal hazards and take appropriate precautions, slight limitation in her ability

to travel in unfamiliar places or use public transportation and to set realistic goals or make plans independently of others and moderate limitation in her ability to respond appropriately to changes in the work setting. Tr. 446.

Plaintiff was referred to Meredith Seckendorf, Ed.D., and Lynn R. Bernstein, Ph.D., for a general clinical evaluation and mental status examination on July 23, 2010 by the Office of Social Security Disability Determinations. Tr. 347. The doctors noted that Plaintiff drove herself to the appointment, arrived on time and had clear, well-modulated speech, adequate grooming and attire and stated that Plaintiff was let go from her job "due to back pain, migraine headaches and excessive sick days also due to her mother's illness and death." Tr. 347. Plaintiff denied any psychiatric hospitalization, psychotherapy, suicide attempts, ideation or legal problems. Tr. 348.

Following Plaintiff's mental status exam, the doctors reported:

> [She] was cooperative, relevant, oriented x3 and evidenced depressed mood and anxious effect. She appeared to have lower than average intelligence, intact long term and recent memory, and demonstrated adequate attention and inconsistent concentration. . . . She only completed 1 mental serial 7 subtraction in 30 seconds. She needed paper and pencil to subtract 13 from 100 and did so slowly. Mental math computations were accurate. She understood concrete verbal analogies and gave a compromised response to the . . . hypothetical judgment question. . . . Thought processes indicated intact reality orientation with denied delusions or hallucinations.

Tr. 348.

Upon reviewing the medical evidence and considering her presentation during the examination, Plaintiff was diagnosed with pain disorder associated with both

psychological factors and a general medical condition, panic disorder and adjustment disorder with depressed mood. Tr. 348. The doctors reported Plaintiff's prognosis to be "fair with treatment." Tr. 348. A letter dated November 12, 2010 from Dr. Bernstein to Dr. Chirillo stated that Plaintiff's clinical interview and mental status examination indicated an adjustment disorder with depression and anxiety. Tr. 400. Additional diagnoses included major depressive disorder, recurrent social phobia and panic disorder, pain due to spine problems and bereavement. Tr. 440.

On August 21, 2010, James Mendelson, Ph.D., diagnosed Plaintiff's affective disorder as "adjustment disorder with mixed emotional features" and Plaintiff's anxiety-related disorder as self-reported panic disorder. Tr. 350, 353, 355. Dr. Mendelson determined that Plaintiff had no functional limitations in activities of daily living; no difficulties in managing social functioning; no difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation of extended duration. Tr. 360.

Dr. Mendelson's "consultant's notes" state that Plaintiff:

> is asserting that she is disabled because of medical/pain issues exclusively; although she has noted on her application that "I was having a heard time dealing with the recent death of my mother (sic)" the claimant does not contend that she is unable to work because of any mental disorder. . . .
>
> On [consultative examination] the claimant alleges depression for the last 6-7 years although she continued to work until her medical problems interfered with her employment and she was missing too much work. There is no history of formal psychiatric treatment for either this depression or the more recent complaint of anxiety attacks, although the claimant is receiving psychotropic medications from her [treating physician].

Tr. 362. Dr. Mendelson disagreed with the diagnostic impressions of Dr. Seckendorf and Dr. Bernstein,[13] noting that "[d]irect clinical observations do not support this impression" and "data shows that within her medical/pain parameters the claimant is fully capable of participating in all activities necessary for personal care, independent living, and reasonable social/vocational pursuits." Tr. 362.

On October 22, 2010, Lee Reback, Psy.D., P.A., noted Plaintiff's adjustment disorder as a medically determinable impairment that did not precisely satisfy the diagnostic criteria for affective disorders and Plaintiff's pain disorder as a medically determinable impairment that did not precisely satisfy the diagnostic criteria for somatoform disorders. Tr. 375, 378. Dr. Reback evaluated Plaintiff for the paragraph "B" criteria and noted mild limitation in activities of daily living and difficulties in maintaining concentration, persistence or pace, but no limitation in maintaining social functioning and no episodes of decompensation of an extended duration. Tr. 381. Dr. Reback's consultant's notes state that Plaintiff "denied any history of formal psychiatric treatment" but did "report having been prescribed Cymbalta and Xanax." Tr. 384.

Dr. Reback further noted that Plaintiff's medical status examination revealed that she was alert and well-oriented, her memory skills were intact, she demonstrated adequate attention and had an intact thought process with no hallucinations or delusions. Tr. 384. Dr. Reback also reported that Plaintiff had

[13] Pain disorder associated with both psychological factors and a general medical condition, panic disorder and adjustment disorder with depressed mood as stated in the Psychological Report dated July 29, 2010. *See* Tr. 348.

inconsistent concentration, her mood was depressed, her affect was anxious and she had difficulty with mental calculations and serial sevens, and noted her diagnoses of adjustment disorder and pain disorder. Tr. 384. Dr. Reback reviewed statements submitted by Plaintiff and her daughter regarding Plaintiff's daily activities and social functioning and concluded: "From a psychological perspective claimant appears capable of a daily and routine activities." Tr. 384.

e. *State agency examinations*

A Physical Residual Functional Capacity Assessment ("Assessment") was completed by Single Decisionmaker ("SDM") Mistry Shyam on July 20, 2010. Tr. 67-74. The Assessment identified degenerative disc disease as Plaintiff's primary diagnosis and a secondary diagnosis of shoulder pain. Tr. 67. The SDM identified Plaintiff's exertional limitations as occasionally able to lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday, sit (with normal breaks) for a total of about 6 hours in an 8-hour workday, and only limited in her ability to push and/or pull to the extent of the limitation on her ability to lift and/or carry. Tr. 68.

The Assessment identified Plaintiff's postural limitations as frequently climbing ramp/stairs, balancing, stooping, kneeling, crouching and crawling, but only occasionally climbing ladder/rope/scaffolds. Tr. 69. Plaintiff had no manipulative limitations, visual limitations, communicative limitations or environmental limitations. Tr. 70-72. The Assessment further stated that, in the SDM's opinion, Plaintiff's symptoms are attributable to a medically determinable impairment, that

the severity or duration of Plaintiff's symptoms is not disproportionate to the expected severity or duration, and that Plaintiff's "signs and symptoms are credible." Tr. 71.

Dr. Pascal Bordy, M.D., interviewed Plaintiff on July 19, 2010 and identified her chief complaints as two herniated discs and migraines. Tr. 337. He noted that Plaintiff's pain is constant, burning and achy and she rated her pain 8/10 at rest but 10/10 when aggravated by certain activities, such as bending, standing, walking and lifting. Tr. 337. Dr. Bordy also noted that Plaintiff was diagnosed with depression and panic attacks, but has never been admitted for these conditions, and migraines. Tr. 337. He noted that Plaintiff does not walk with an assistive device and that medication reduces her pain. Tr. 337.

Dr. Bordy observed that Plaintiff was "in no distress" and could walk 100 feet in the office without limping or using a cane, but had slight difficulty standing from a sitting position. Tr. 338. Dr. Bordy found no deformity, edema or erythema, joint pain, tenderness, swelling or muscle atrophy and normal muscle strength and sensory responses in Plaintiffs upper and lower extremities; no spasticity, rigidity involuntary movements or tremors and normal strength and fine manipulation in Plaintiff's upper extremities; and normal ranges of motion in Plaintiff's lower extremities. Tr. 339-40.

Plaintiff's cervical and lumbar spine tested negative for various conditions and deformities, but Dr. Bordy noted moderate scoliosis to the right and hypertonic,

tender paraspinal musculature in the cervical spine, thoracic spine and lumbar spine. Tr. 341. Dr. Bordy also observed:

> Orientation, memory, appearance, behavior and ability to relate during the examination were entirely within normal limits. The claimant was appropriate, polite, pleasant, cooperative and able to a [sic] clear, concise, coherent medical history without apparent cognitive difficulties. Affect was normal without signs of depressive disorders and without signs of agitation, irritability or anxiety. Hygiene and grooming were good, effort and cooperation were good.

Tr. 341. Dr. Bordy's clinical impressions were chronic lumbar, lumbosacral pain with multiple bulging discs with radiculopathy and myofascitis aggravated by scoliosis; migraines; chronic pain management secondary to those conditions; and depression, anxiety and panic attacks. Tr. 341-42.

In an October 18, 2010 Physical RFC Assessment, John Purvis, M.D., identified Plaintiff's exertional limitations as occasionally able to lift and/or carry 10 pounds, frequently able to lift and/or carry less than 10 pounds, able to stand and/or walk (with normal breaks) at least 2 hours in an 8-hour workday, sit (with normal breaks) for about 6 hours in an 8-hour workday, and no restriction on her ability to push and/or pull, except as limited by her ability to lift and/or carry. Tr. 364-65. Dr. Purvis identified Plaintiff's postural limitations as frequently climbing ramp/stairs and balancing; occasionally stooping, kneeling, crouching and crawling; and never climbing ladder/rope/scaffolds. Tr. 366. Dr. Purvis explained that Plaintiff's degenerative disc disease causes her postural limitations, but that Plaintiff's consultative exam did not reveal any functional restriction. Tr. 366. Dr. Purvis found that Plaintiff had no manipulative limitations, visual limitations or

communicative limitations, and identified as Plaintiff's only environmental limitation that she should avoid concentrated exposure to "fumes, odors, dusts, gases, poor ventilation, etc." due to evidence of pulmonary fibrosis. Tr. 367-68.

Finally, Dr. Purvis stated that Plaintiff's consultative exam "is most consistent with a light RFC, but a sedentary RFC was given due to the Residual Functional Capacity Questionnaire of her treating physician, which was given controlling weight." Tr. 369. Dr. Purvis noted the presence of the medical source statements in Plaintiff's file and that the medical source's conclusions about Plaintiff's limitations were not significantly different from his own findings. Tr. 370.

*f. Vocational Expert testimony*

Vocational Expert ("VE") William Harvey testified at Plaintiff's hearing before the ALJ. He identified Plaintiff's PRW as medical unit secretary, DOT title 201.362-014, with sedentary physical demands and SVP of 6, or skilled.[14] Tr. 59. The ALJ posed the following hypothetical:

> Okay, let's assume for the first hypothetical that we have, we have an age change between approaching and advanced age. We have at least a high school education and the work background that you've described. Let's assume the individual would not be able to perform medium or heavy work, would be capable of performing light or sedentary work activity as defined in the regulations. Let's further assume the individual should not have to climb any ladders, ropes or scaffolds, would be capable of performing

[14] SVP is specific vocational preparation and refers to "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Dictionary of Occupational Titles*, Appendix C; *see also Battle v. Astrue*, 243 Fed. Appx. 514, 518 n.3 (11th Cir. 2007). An SVP of 6 means that the time required is over one year up to and including two years to learn the techniques, acquire the information and develop the facilities needed for average job performance. *Dictionary of Occupational Titles*, Appendix C.

> other postural activities occasionally including climbing stairs, stooping, kneeling, crouching or crawling. Let's even rule out crawling, leave it to crouching, kneeling[,] stooping, balancing, climbing stairs. . . . No concentrated exposure to noxious dust and fumes, we're going to assume the individual could perform on a regular basis at his level of function with the customary work breaks every two hours. With those limitations would such an individual be able to perform the claimant's past work?

Tr. 59-60. The VE responded affirmatively. Tr. 60. The VE further testified that if the individual's ability to stand and walk for no more than two to four hours in a workday, keeping the same restrictions as the first hypothetical, the individual would still be able to perform the claimant's past work, and the ability to perform only "frequent" as opposed to "constant" handling, fingering and feeling would still enable the individual to perform the past work. Tr. 60-61.

If that ability were reduced from "frequent" to "occasional," however, such limitation would preclude the past work. Tr. 61. If the individual had a reduced ability to maintain concentration, persistence or pace such that she could not remember instructions or perform complex tasks more than occasionally, the VE testified that such limitations would preclude her past work. Tr. 61. The VE also testified that an individual with the limitations identified by Plaintiff's treating physician[15] could only perform sedentary work. Tr. 61. If that same individual additionally needed a 5 to 10 minute break every 30 to 60 minutes, he continued, such

[15] The specific limitations presented to the VE were the ability to sit for 30 minutes and stand and walk for 10 minutes at a time, sit for six hours total and stand and walk for two hours total in a workday, only occasionally lift 10 pounds and only occasional reaching in all directions. Tr. 61.

limitation would not allow for any work in the national economy. Tr. 61-62. The VE concluded that an inability to perform complex tasks on more than an occasional basis would allow for maximum SVP of 4, which would then limit the individual to unskilled or semiskilled work.[16] Tr. 63.

## VI. Analysis

### *a. Whether the ALJ erred in determining that Plaintiff's mental impairments of depression, generalized anxiety and social phobia were nonsevere*

Plaintiff first contends that the ALJ erred in finding that her depression, generalized anxiety and social phobia are non-severe impairments, because those conditions "severely affect her ability to complete work-related activities and have met the durational requirement." Doc. 16 at 11. Specifically, Plaintiff contends that the ALJ erred by attributing "significant probative weight" to the opinions of reviewing physicians James Mendelson, Ph.D., and Lee Reback, Psy.D., that Plaintiff's mental impairments were not severe. Doc. 16 at 11-12. Plaintiff argues that attributing such weight to those opinions was improper, because Plaintiff did not begin mental health treatment until after those doctors completed their review; and therefore their opinions were not based on a complete record. Doc. 16 at 12.

When determining how much weight to afford an opinion, the ALJ considers whether there is an examining or treatment relationship and the nature and extent thereof; whether the source offers relevant medical evidence to support the opinion;

---

[16] An SVP of 4 means that the time required is over three months up to and including six months to learn the techniques, acquire the information and develop the facilities needed for average job performance. *Dictionary of Occupational Titles*, Appendix C

consistency with the record as a whole; the specialization of the source, if any; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)-(6). Findings of fact made by state agency medical and psychological consultants as to the nature and severity of a claimant's impairments must be treated as expert opinion evidence of nonexamining sources by the ALJ, but the ultimate opinions as to whether a claimant is disabled, the severity of a claimant's impairments, the claimant's RFC and the application of vocational factors are exclusively reserved to the Commissioner. SSR 96-6p; 20 C.F.R. § 404.1527(d)(1)-(2). Unless a treating source's opinion is given controlling weight, the ALJ must explain the weight given to the opinions of other consultants, doctors or medical specialists. 20 C.F.R. § 404.1527(e)(2)(ii); *Vuxta v. Comm'r of Soc. Sec.*, 194 Fed. Appx. 874, 877 (11th Cir. 2006).

Here, the ALJ explained that he gave "significant probative weight" to the opinions of the consultative physicians, Dr. Mendelson and Dr. Reback, that Plaintiff's mental impairments were not severe based on the doctors' review of Plaintiff's mental status evaluation performed by Dr. Seckendorf and Dr. Bernstein and Plaintiff's lack of mental health treatment. Tr. 24. In his report, Dr. Mendelson specifically noted that Plaintiff alleged disability based upon her pain and physical conditions, not her mental conditions, and that Plaintiff alleged that she suffered from depression for six to seven years but continued to work. Tr. 362. Dr. Mendelson also noted that, despite Plaintiff's mental health impairments, as of the

date of his review on August 21, 2010 Plaintiff had never sought or received any formal mental health treatment. Tr. 362.

Dr. Reback's report of October 22, 2010 noted that Plaintiff "denied any history of formal psychiatric treatment" and that Plaintiff's medical status examination stated she was alert and well-oriented, her memory skills were intact, she demonstrated adequate attention and had an intact thought process with no hallucinations or delusions, but that Plaintiff had inconsistent concentration, her mood was depressed and affect was anxious, she had difficulty with mental calculations and serial sevens. Tr. 384. He also noted her diagnoses of adjustment disorder and pain disorder. Tr. 384. Nevertheless, Dr. Reback determined that Plaintiff's mental impairments were not severe.

As to Plaintiff's mental impairments, the ALJ stated that he considered her impairments singly and in combination and found they do not cause more than minimal limitation in her ability to perform basic work activities and are therefore nonsevere. Tr. 24. The ALJ further explained that, in finding Plaintiff's mental impairments nonsevere, he considered the paragraph B criteria and adopted the opinions of the state agency mental health experts that Plaintiff's impairments do not cause more than minimal limitation in her activities of daily living, social functioning, or concentration, persistence or pace and that she has not experienced any episodes of decompensation of an extended duration. Tr. 24-25.

Despite Plaintiff's contention that it was error for the ALJ to accord "significant probative weight" to the state agency mental health experts because their

opinions were rendered prior to Plaintiff beginning mental health treatment, the ALJ specifically and separately discussed Plaintiff's mental health treatment and how it factored into his decision. The ALJ noted that Plaintiff began treatment with Dr. Bernstein in November 2010 and discussed Dr. Bernstein's diagnoses, but stated that they "appear to be based, at least in large part, on the claimant's subjective reports rather than clinical observations." Tr. 25. The ALJ also noted that treatment records reflect that Plaintiff reported immediate improvement upon beginning therapy. Tr. 25.

The ALJ concluded that, even if Plaintiff's mental impairments had initially caused more than minimal limitation on her ability to perform basic work activities—and he found that they did not—the required severity neither lasted for twelve consecutive months nor was expected to last for twelve continuous months, and therefore does not meet the durational requirement of 20 C.F.R. § 404.1505(a) for an impairment to be considered severe. Tr. 25. Accordingly, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 25.

Upon review of the record, the ALJ did not err in attributing significant probative weight to the state agency medical examiners, despite the fact that their opinions were rendered prior to Plaintiff beginning mental health treatment, because the ALJ noted Plaintiff's mental health treatment, discussed it in his opinion and concluded that Plaintiff is not disabled "[a]fter careful consideration of all the

evidence." Tr. 21. Moreover, Plaintiff's mental health treatment records do not indicate that her conditions prevent her from working. *See Carter v. Comm'r of Soc. Sec.*, 411 Fed. Appx. 295, 299 (11th Cir. 2011) (treating physician's opinion deserved little weight where it did not indicate why claimant's diagnosed condition prevented him from being gainfully employed).

The ALJ's determination that Plaintiff's mental impairments do not meet or equal the severity of a listing is supported by substantial evidence and is therefore not error. Even if the ALJ erred in determining that Plaintiff's mental impairments are not severe—and the Court finds that he did not—the ALJ found at step two that Plaintiff's degenerative disc disease of the lumbar spine and obesity are severe impairments, which allowed the ALJ to proceed to step three of the analysis where he was required to consider *all* of Plaintiff's impairments, whether severe or not. *Heatly v. Comm'r of Soc. Sec.*, 382 Fed. Appx. 823, 824-25 (11th Cir. 2010). Any error is therefore harmless.

*b. Whether the ALJ properly analyzed the opinion of Plaintiff's treating physician in determining her RFC*

The ALJ determined that Plaintiff has the RFC to perform less than a full range of light work; specifically, that Plaintiff is able to lift up to 10 pounds frequently or occasionally, can sit up to six hours in an eight hour workday and can stand/and or walk at least two hours in an eight hour workday, but can only occasionally balance, stoop, kneel and crouch. Tr. 26. The ALJ determined that Plaintiff cannot climb ladders, ropes or scaffolds, crawl or be exposed to noxious dust and fumes and that she requires the customary work breaks. Tr. 26.

On appeal, Plaintiff argues that the ALJ's opinion is not supported by substantial evidence because the ALJ failed to properly analyze the opinion of Plaintiff's treating physician, Dr. Chirillo. Plaintiff argues that Dr. Chirillo's opinions should have been given greater weight because he was Plaintiff's treating physician. Plaintiff concedes in her brief that, "[w]hile true that many of the dates in the treatment notes refer to phone calls, the ALJ failed to point out that Dr. Chirillo was kept apprised of these phone calls and frequently initialed the record or hand-wrote his own notes regarding prescriptions or courses of action . . . ." Doc. 16 at 17. Plaintiff also contends that the ALJ should not have discounted Dr. Chirillo's opinions based on his "possible" diagnosis, because Dr. Chirillo later submitted a letter explaining that diagnosis. Doc. 16 at 19. Finally, Plaintiff contends that the ALJ should not have given reduced weight to Dr. Chirillo's opinions that attributed additional limitations to Plaintiff, because "[w]hile it is true that the record contains only one treatment note (dated June 8, 2011) from Dr. Chirillo after June 2010 there is no indication this was because Dr. Chirillo did not continue to treat Plaintiff." Doc. 16 at 20.

While Defendant acknowledges that Dr. Chirillo is Plaintiff's treating physician, Defendant argues that the ALJ properly discounted his opinions because they are inconsistent with Dr. Chirillo's own treatment notes and not supported by other substantial evidence in the record. Doc. 19 at 11-12. Upon review, the ALJ properly considered Dr. Chirillo's opinions in accordance with the controlling law and regulations, and the ALJ's decision is supported by substantial evidence.

In assessing Plaintiff's RFC, the ALJ recognized Dr. Chirillo's reports, but stated that Dr. Chirillo's opinions were given reduced weight in part because the "majority" of his treatment notes were based on telephone conversations between Plaintiff and nurses. Tr. 27. The ALJ further noted that Plaintiff's June 2010 visit to Dr. Chirillo's office was "merely for an annual checkup and to have a disability form completed." Tr. 27.

The ALJ explained that he gave reduced weight to Dr. Chirillo's medical source statement from June 2010, and even less weight to those from February 2011 and November 2011, because the reports were completed by Dr. Chirillo without conducting an examination of Plaintiff. Tr. 27. The ALJ further determined that Dr. Chirillo's opinions were entitled to reduced weight because Dr. Chirillo identified conditions such as cervical arthritis, fibromyalgia, possible foraminal stenosis and intermittent weakness despite a lack of evidence to support such diagnoses. Tr. 27. The ALJ also noted that the record reflects no significant worsening or Plaintiff's condition to coincide with her alleged onset date. Tr. 27.

When an impairment does not meet or equal a listed impairment at step 3, the ALJ will proceed to step 4 to assess and make a finding regarding the claimant's RFC based upon the relevant medical and other evidence in the record. 20 C.F.R. § 404.1520(e). In this case, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 25. Therefore, the ALJ proceeded to assess and make a finding regarding Plaintiff's RFC.

The RFC is the most that a claimant can do despite her limitations. *See* 20 C.F.R. § 404.1545(a). At the hearing level, the ALJ has the responsibility of assessing a claimant's RFC. *See* 20 C.F.R. § 404.1546(c). The ALJ is required to assess a claimant's RFC based on all of the relevant evidence in the record, including any medical history, daily activities, lay evidence and medical source statements. 20 C.F.R. § 404.1545(a). The claimant's age, education, and work experience are considered in determining her RFC and whether she can return to her past relevant work, *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)), and the RFC assessment is based upon all relevant evidence of a claimant's ability to do work despite her impairments. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004); *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)).

Generally, "[a]n ALJ must give a treating physician's opinion substantial weight, unless good cause is shown." *Castle v. Colvin*, --- Fed. Appx. ---, 2014 WL 595284 (11th Cir. Feb. 18, 2014) (citing *Phillips*, 357 F.3d at 1240); *Lewis*, 125 F.3d at 1440; *Sabo v. Comm'r of Soc. Sec.*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996). "Good cause exists when the '(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting *Phillips*, 357 F.3d at 1241). Under the regulations, the ALJ must weigh any medical opinion based on the treating relationship with the claimant, the length of the treatment relationship,

the evidence the medical source presents to support his opinion, how consistent the opinion is with the record as a whole, the specialty of the medical source and other factors. *See* 20 C.F.R. § 404.1527(c)(2)-(6).

Opinions of treating sources are usually given more weight because treating physicians are the most likely to be able to offer detailed opinions of the claimant's impairments as they progressed over time and "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. § 404.1527(c)(2). If the opinion of a treating physician as to the nature and severity of a claimant's impairment is supported by acceptable medical evidence and is not inconsistent with other substantial evidence of record, the treating physician's opinion is entitled to controlling weight. *Id.* By contrast, if the ALJ does not afford controlling weight to a treating physician's opinion, he must clearly articulate the reasons for doing so. *Winschel*, 631 F.3d at 1179. Although the regulations require that the ALJ consider all factors set forth in 20 C.F.R. § 404.1527(c), the ALJ is not required to expressly address each factor so long as he demonstrates good cause to reject the opinion. *Lawton v. Comm'r of Soc. Sec.*, 431 Fed. Appx. 830, 833 (11th Cir. 2011).

Opinions on some issues, however, such as the claimant's RFC and whether the claimant is disabled or unable to work, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; *i.e.*, that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(d); SSR 96-5p. Thus,

the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(d)(1). Nor is the ALJ required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion as to whether the claimant meets a listed impairment, a claimant's RFC (20 C.F.R. §§ 404.1545 and 404.1546) or the application of vocational factors, because those determinations are the within the sole province of the Commissioner. 20 C.F.R. § 404.1527(d)(3).

In this case, the ALJ properly considered the June 2010 and February and November 2011 opinions of Dr. Chirillo and gave them reduced weight because they were not supported by his own or other medical treatment notes or the objective evidence, as outlined in the ALJ's opinion. Tr. 27-28. In doing so, the ALJ discussed the evidence from various medical sources, as well as Plaintiff's activities of daily living and course of treatment, to support his finding that Dr. Chirillo's opinion is inconsistent with the other substantial evidence in the record. Tr. 27-29. *See* 20 C.F.R. §§ 404.1527(c)(3), (4); *see also Magill v. Comm'r of Soc. Sec.*, 147 Fed. Appx. 92, 94 (11th Cir. 2005) ("[A]n ALJ need not give a treating physician's opinion considerable weight if the applicant's own testimony regarding her daily activities contradicts that opinion." (citing *Phillips v. Barnhart*, 357 F.3d at 1241)).

The ALJ noted that Dr. Chirillo's treatment notes reflect only routine or conservative treatment and that Plaintiff made only intermittent complaints of low back pain, headaches and lower extremity weakness which is inconsistent with her current allegations of constant and increasingly worsening conditions. Tr. 28. The

ALJ stated that Dr. Bordy's consultative examination also revealed that Plaintiff had relatively benign examination findings and exhibited no joint pain, tenderness or swelling. Tr. 28. The ALJ also noted that Plaintiff had many negative tests and normal examination results, which he determined "collectively contradict many of the claimant's allegations regarding extremity weakness, numbness, or tingling." Tr. 28. The ALJ also stated that Plaintiff reported activities of daily living that do not support greater limitations than those the ALJ included in Plaintiff's RFC. Tr. 29.

Upon review, there is no evidence in Dr. Chirillo's treatment records, other than Plaintiff's own subjective complaints, that support his opinion that Plaintiff is limited to less than sedentary work. The ALJ may properly assign reduced weight to a treating source opinion that is inconsistent with and unsupported by other evidence in the record. 20 C.F.R. §§ 404.1527(c)(3), (4). Moreover, when Dr. Chirillo opined in June 2010 and February and November 2011 that Plaintiff was limited to such work, he had not conducted any new examinations of Plaintiff. Thus, the ALJ could assign less weight to Dr. Chirillo's opinions based on this fact as well. *See* 20 C.F.R. § 404.1527(c), (c)(2)(i)-(ii) (an ALJ must weigh any medical opinion based on the length and nature of the treatment relationship). Accordingly, the ALJ properly evaluated the factors set forth in 20 C.F.R. § 404.1527(c)(2)-(6) and determined that Dr. Chirillo's opinions were entitled to reduced weight.

As to Plaintiff's contention that a lack of treatment records after June 2010 does not necessarily mean that Dr. Chirillo did not continue to treat Plaintiff, it is Plaintiff's burden to produce evidence in support of her claim of disability. *See*

*Heinrichs-Walters v. Astrue*, No. 8:11-cv-1662-T-27AEP, 2010 WL 3893572, at *3 (M.D. Fla. Aug. 20, 2012) ("[I]t is the Plaintiff's burden to prove that she suffers from the alleged impairments by putting forth objective medical evidence to support her claims." (citing *Moore v. Barnhart*, 405 F.3d at 1211)). Whether, as Plaintiff contends, Dr. Chirillo continued to treat Plaintiff after June 2010, the record contains no evidence of such additional treatment.

Finally, to the extent that Dr. Chirillo opined that Plaintiff is disabled or is only capable of a particular level of work-related function, "treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance." 20 C.F.R. § 404.1527(d)(3); SSR 96-5p. Although such opinions of a treating source "must never be ignored," the ALJ considered Dr. Chirillo's opinions and explained the consideration they were given. SSR 96-5p. The ALJ therefore properly considered the relevant factors and determined that Dr. Chirillo's opinions were not entitled to controlling weight, and substantial evidence supports the ALJ's decision.

*c. Whether the ALJ erred in his analysis of the required factors when assessing Plaintiff's credibility*

Plaintiff next contends that the ALJ erred in determining that her statements as to the intensity, persistence and limiting effects of her symptoms were not fully credible. Doc. 16 at 21. The regulations require the ALJ to consider specific factors when making credibility determinations. Those factors include the claimant's daily activities; the location, duration, frequency and intensity of pain and other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects

of any medications; treatment other than medication; and any other measures to reduce pain or other symptoms. 20 C.F.R. § 404.1529(c)(3).

SSR 96-7p further explains the process by which a claimant's credibility must be evaluated:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.

A claimant's statements as to the intensity and persistence of pain or other symptoms, or how they affect her ability to work, may not be disregarded simply because they are not supported by objective medical evidence; instead, the ALJ must state specific reasons for his credibility determination and the weight given to subjective statements, which must be supported by the record. 20 C.F.R. § 404.1529(c)(4) (subjective complaints are evaluated in relation to other evidence); SSR 96-7p; *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) ("If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.").

Here, the ALJ stated that Plaintiff's reported daily activities were not consistent with the severity of her alleged limitations. Specifically, the ALJ noted that Plaintiff reported being able to care for herself and her dog, and that she cared for her dying mother before she passed away, and that Plaintiff goes to the store, out to dinner, has lunch with friends and does some housecleaning. Tr. 29. Daily

activities are properly considered when evaluating complaints of disabling pain. 20 C.F.R. § 404.1529(c)(3)(i). While the performance of everyday tasks cannot be used as the sole evidence to determine that Plaintiff is not disabled, Plaintiff's participation in such activities supports the ALJ's determination that she is capable of light work, with restrictions. *See, e.g.*, *Graham v. Apfel*, 129 F.3d 1420, 421-22 (11th Cir. 1997) (finding that activities such as performing light housework and grocery shopping supported ALJ's determination that the plaintiff could perform light work); *Moore*, 405 F.3d at 1212 (noting that the ALJ properly discredited a treating physician's testimony by pointing out the contrasts in the claimants daily activities and the physician's diagnosis); *Wilson v. Barnhart*, 284 F.3d at 1226 (upholding the ALJ's finding that the claimant's allegations of disabling pain were not credible because her daily activities demonstrated otherwise).

The ALJ also stated that Plaintiff received "only routine/conservative treatment" for her conditions and that Plaintiff's medical records revealed only intermittent complaints of pain, "contrary to her current allegations of constant, increasingly worsening conditions." Tr. 28. "A doctor's conservative medical treatment for a particular condition tends to negate a claim of disability." *Sheldon v. Astrue*, 268 Fed. Appx. 871, 872 (11th Cir. 2008). The ALJ further noted that Plaintiff alleged increasing depression in June 2010, yet was not referred for mental health treatment until November 2010. Tr. 29. "A claimant's failure to seek medical treatment is also relevant in assessing credibility." *Sheldon*, 268 Fed. Appx. at 872. Moreover, upon beginning mental health treatment Plaintiff was able to

increase her social functioning. Tr. 29; *see Crow v. Comm'r of Soc. Sec.*, --- Fed. Appx. ---, 2014 WL 3035602, at *6 (11th Cir. July 7, 2014) ("Given Crow's quick and sustained improvement using prednisone, and daily activity that indicated a greater capacity for work than alleged, the ALJ made a clearly articulated credibility finding that was supported by substantial evidence.").

Ultimately, the ALJ concluded that Plaintiff's "subjective complaints and alleged limitations are not fully persuasive and that she retains the capacity to perform work activities with the limitations" he identified in the opinion, and noted that his conclusion was based on Plaintiff's reported activities of daily living, the objective medical evidence and medical and mental health treatment records. Tr. 29. A reviewing court will not disturb a clearly articulated credibility finding that is supported by substantial evidence. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987); *Foote*, 67 F.3d at 1562. In this case, the ALJ properly considered the relevant factors when determining that Plaintiff's statements were not fully credible and articulated specific reasons for doing so. The ALJ's decision is supported by substantial evidence.[17]

[17] Despite Plaintiff's contention, the ALJ did not "improperly" refer to Plaintiff's absences as due or related to her mother's illness and eventual death. The record reveals that Plaintiff stated or reported on multiple occasions that her mother's condition was at least a factor in her excessive work absences. *See, e.g.*, Tr. 27, 43, 160.

*d. Whether the ALJ's determination that Plaintiff could perform her past work as a medical secretary is supported by substantial evidence*

Finally, Plaintiff contends that the ALJ's determination at step four that she could return to her past work as a medical secretary is not supported by substantial evidence because the ALJ erred in determining that Plaintiff's mental health impairments were not severe, that she was capable of performing light work with limitations and by determining that Plaintiff's testimony as to the limiting effects of her conditions was not fully credible. Doc. 16 at 24. Plaintiff specifically highlights the VE testimony that, if a person was limited to the degree that Dr. Chirillo found Plaintiff to be, that individual could only perform sedentary work. Plaintiff therefore argues that if the ALJ properly assessed Dr. Chirillo's opinions, she could not perform her past work because her mental impairments limit her to unskilled or semi-skilled work. Doc. 16 at 24-25.

The claimant bears the burden of persuasion through step four and at step five the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. at 146 n.5. A claimant is entitled to benefits only if the ALJ determines that she is unable to perform her past work or any other work. *Id.* at 141-42. The ALJ properly assessed Dr. Chirillo's opinions and sufficiently explained his reasons for giving them reduced weight and for partially discrediting Plaintiff's complaints as to the intensity and severity of her and pain. Because the ALJ did not find Dr. Chirillo's opinions fully credible, the ALJ did not err in determining that Plaintiff had the RFC to perform light work with limitations and skilled work. The ALJ therefore properly found that

Plaintiff is capable of performing her past work as a medical secretary, both as that job is performed in the national economy and as actually performed by Plaintiff, and the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence.

**VII. Conclusion**

Accordingly, for the reasons stated in this Report and Recommendation, it is hereby respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

**DONE** and **ENTERED** in Fort Myers, Florida on this 18th day of July, 2014.

CAROL MIRANDO
United States Magistrate Judge

Copies:

Honorable John E. Steele
Counsel of record